UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Josmens Jimenez Vera,

             Petitioner

v.

Todd Blanche, et al.,

             Respondents[1]

Case No. 2:26-cv-00682-CDS-NJK

**Order Granting in Part the Petitioner's Habeas Petition**

[ECF No. 9]

This is an immigration habeas action brought by petitioner Josmens Jimenez Vera, who filed a first amended petition on April 1, 2026. First am. pet., ECF No. 9. Therein, amongst his six claims, Jimenez Vera asserts that his continued detention without a bond hearing violates his due process rights because he is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2). *Id.* The respondents filed a response on April 15, 2026. *See* Resps., ECF Nos. 11, 12.[2] This matter is now fully briefed. *See* Reply, ECF No. 13. Having considered the pleadings,[3] I grant the first amended petition based on Jimenez Vera's first claim for relief.

I.      **Background**

Jimenez Vera is a citizen of Colombia and Venezuela who entered the United States with his family in June 2023 at San Luis, Arizona, after fleeing Venezuela due to persecution. *See* ECF No. 9 at 4; ECF No. 12 at 7; Notice to Appear, Resp'ts' Ex. A, ECF No. 12-1. On June 15, 2023, Jimenez Vera and his family were arrested by U.S. Border Patrol and subsequently issued an I-826 Notice to Appear (NTA). ECF No. 9 at 4.

---

[1] Because Pamela Bondi is no longer serving as the Attorney General, the Clerk of Court is directed to substitute Todd Blanche, Acting Attorney General.

[2] Respondent John Mattos separately filed a response, taking no position on the habeas or bond relief sought. *See* ECF No. 11.

[3] The court notes that Jimenez Vera also filed notice of class membership on April 23, 2026. Not., ECF No. 14. Although Jimenez Vera filed a notice of class membership, the first amended petition was screened and he was found not to qualify because he seeks relief outside the scope of the class action. As such, this action was not reassigned. For this reason, the court does not reach any decision or address the parties' position as to Jimenez Vera's class membership.

On May 20, 2024, Jimenez Vera filed an I-589, an application for asylum, and withholding of removal. ECF No. 9 at 4. At some point, Jimenez Vera filed a work permit application. On December 3, 2024, Jimenez Vera's application for employment authorization was approved. *Id.* On April 2, 2025, Jimenez Vera applied for a Temporary Protected Status (TPS). *Id.* On October 5, 2025, Jimenez Vera was arrested in Utah "for the offenses of sell, offer, furnish alcoholic product to a minor—knowingly, open container/drinking alcohol in a vehicle, and purchase, possess, consume by minor—measurable amounts." *Id.*

On November 21, 2025, Jimenez Vera appeared before an IJ who granted the government's motion to pretermit Jimenez Vera's application for asylum and removal, finding that he was barred from applying for asylum, statutory withholding of removal, or protection under CAT because he was subject to the Asylum Cooperation Agreement (ACA). *Id.*; IJ order, Pet.'s Ex. 2, ECF No. 9-2 at 4. The IJ then ordered Jimenez Vera removed to Honduras on December 1, 2025. ECF No. 9 at 4–5; ECF No. 9-2 at 2. On December 4, 2025, Jimenez Vera appealed both the November and December 2025 IJ's orders to the BIA. ECF No. 9 at 5; Appeal, Pet.'s Ex. 3, ECF No. 9-3.

On December 22, 2025, Jimenez Vera appeared for a bond hearing, where the IJ denied his request for bond. ECF No. 9 at 5; Custody redetermination hearing order, Pet.'s Ex. 4, ECF No. 9-4. The record is devoid of any finding by the IJ that the petitioner was a danger to the community or a flight risk. Rather, the order states that Jimenez Vera's requested custody redetermination was denied for the following reason: "Asylum Cooperation Agreement with Honduras. Motion to pretermit granted. Ordered removed to Honduras." ECF No. 9 at 5.[4]

---

[4] Jimenez Vera argues as to his detention pending removal pursuant to the ACA entered between the United States and Honduras, that he is entitled to a constitutionally adequate opportunity to present a fulsome application for fear-based protection to prove that he has a well-founded fear of being deported to Honduras and/or Venezuela and Columbia. ECF No. 9 at 5. I note that the federal respondents do not address, nor take any position on this argument in their response. *See* ECF No. 12.

As a result, Jimenez Vera brings this petition asserting the following six claims: (1) his continued detention without a bond hearing violates his due process rights because he is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2); (2) his prolonged detention without a bond hearing violates his right to due process under the Fifth Amendment; (3) ICE's policy to remove noncitizens to a third country with no notice or opportunity to seek fear-based protection violates Jimenez Vera's Fifth Amendment right to due process and constitutes arbitrary and capricious agency action in violation of the Administrative Procedure Act (APA); (4) his detention in immigration custody pursuant to recent ICE policy regarding third country removal violates the Fifth Amendment Due Process Clause; (5) the ACA violates Jimenez Vera's Fifth Amendment Due Process Clause; and (6) his detention pursuant to his removal order based on the ACA violates the Fifth Amendment Due Process Clause. *See* ECF No. 9.

## II.     Legal authority

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III.    Discussion

The petitioner raises several claims for relief. *See* ECF No. 9. Because I find that Jimenez Vera's continued detention without a constitutionally sufficient bond hearing under 8 U.S.C. § 1226(a) violates his due process rights, I grant his amended petition on this basis, and deny relief on his other claims without prejudice.

3

Jimenez Vera argues that he is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2), and that he should have been entitled to a proper bond determination because he timely filed an appeal of the IJ's removal order. ECF No. 9 at 7 (citing *Rojas-Lara v. United States*, 2026 WL 172676, at *5 (D. Nev. Jan. 22, 2026) (explaining that because the petitioner appeals the IJ's removal order, he is not subject to a final order of removal and not detained under § 1231)). Further, he argues that because he was detained in the interior of the United States, the only legal authority under which he can be lawfully detained is 8 U.S.C. § 1226(a). ECF No. 9 at 8.

In opposition, the respondents argue that there is no dispute that Jimenez Vera is an "applicant for admission" under Section 1225(a), because he entered the United States near San Luis, Arizona without inspection and was apprehended at the border by U.S. Border Patrol agents, was issued an NTA, and released into the United States. ECF No. 12 at 2. In essence, the respondents argue that the petition should be denied because the petitioner is subject to mandatory detention under § 1225(b). *Id.*

To support their position, the federal respondents also seek to incorporate by reference its prior arguments raised in a response that was filed in *Jacobo-Ramirez v. Mullin*, case no. 2:25-cv-02136-RFB-MDC. ECF No. 12 at 7. Because it is unclear what response the federal respondents are referring to as there are over 140 docket entries in the class action suit, it is essentially non-responsive, so I do not address their "incorporated" response. *See generally Jacob-Ramirez v. Mullin*, case no. 2:25-cv-02136-RFB-MDC. The respondents also cite to *Buenrostro-Mendez v. Bondi*, asserting that the court ruled that "unadmitted aliens apprehended anywhere in the United States are ineligible for release on bond, regardless of how long they have resided inside the United States." ECF No. 12 at 9 (citing 166 F.4th 494 (5th Cir. 2026)). Though the respondents have again reshaped their interpretation of § 1225, I still find the respondents' arguments unpersuasive.

4

Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). On the other hand, Section 1226(a) states:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> (B) conditional parole . . . .

8 U.S.C. § 1226(a). The plain language of these provisions indicates that both § 1225 and § 1226 govern the detention of noncitizens pending removal proceedings. The difference is that § 1225 provides for mandatory detention, whereas § 1226 allows for the release of the noncitizen on conditional parole or bond.

"A statute should be construed so that effect is given to all its provisions." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (citation omitted); *Corley v. United States*, 556 U.S. 303, 314 (2009). "When interpreting a statute, the inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'" *See In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (citation omitted). But "the 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.'" *King v. Burwell*, 576 U.S. 473, 486 (2015) (citation omitted). And "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012) (citation omitted). The court must also "use every tool at [its] disposal to determine the best reading of the statute." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024).

As a threshold matter, § 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible **arriving aliens**; referral for hearing." 8 U.S.C. § 1225 (emphasis added). This title "is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest." *Yates v. United States*, 574 U.S. 528, 552 (2015) (Alito, J., concurring). And § 1225(b)(2)(A) provides for the detention "of an alien who is *an applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). Important here, the INA defines an "applicant for admission" as "[a]n alien present in the United States who **has not been admitted or who arrives in the United States.**" *See id.* at § 1225(a)(1) (emphasis added). The INA further defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *See id.* at § 1101(a)(13). The word "entry" is not defined in the INA. *See generally id.* at § 1101. But the dictionary definition of "entry" is "the right or privilege of entering" or "the act of entering." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/entry (last visited May 20, 2026). "Entry" has long been understood to mean "a crossing into the territorial limits of the United States." *Hing Sum v. Holder*, 602 F.3d 1092, 1100–01 (9th Cir. 2010) (quoting *Matter of Pierre*, 14 I. & N. Dec. 467, 468 (BIA 1973)). The phrase "seeking admission" is also undefined in the statute. The dictionary definition of "seeking" is "ask[ing] for." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/seeking (last visited May 20, 2026). And the word "seeking" "necessarily implies some sort of present-tense action." *Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass. 2025) (citations omitted).

The respondents' interpretation of § 1225 would render the qualifier "seeking admission" in the statute entirely unnecessary and therefore improper. "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citations omitted). Given Congress's decision to use different

6

terms in § 1225—i.e., "applicant for admission" and "alien seeking admission"—I presume that Congress intended these phrases to mean different things. *See Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given statute . . . different terms usually have different meanings." (citation omitted)); *see also Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *5 (E.D. Mich. Sep. 9, 2025); 8 U.S.C. § 1225(a)(2)(3) (reasoning that Congress's decision to include the word "arriving," and references to methods of physical arrival, such as "stowaways" and "crewmen," in § 1225 shows Congress's intent to address noncitizens arriving "at a border or port of entry.").

In contrast, § 1226 is titled: "Apprehension and detention of aliens." 8 U.S.C. § 1226. "That Congress separated removal of arriving aliens," as set forth in § 1225, "from its more general section for 'Apprehension and detention of aliens,'" as set forth in § 1226, "implies that Congress enacted § 1225 for a specific, limited purpose." *Pizarro Reyes*, 2025 WL 2609425, at *5 (citing *Dubin v. United States*, 599 U.S. 110, 122 (2023)). As the U.S. Supreme Court explained in *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018), § 1225 is part of the "process of decision [that] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible," whereas "[s]ection 1226 generally governs the process of arresting and detaining . . . aliens [already living within the United States] pending their removal." *Id.* at 288. Thus, *Jennings* differentiated between noncitizens initially arriving to the United States who are governed by § 1225, and noncitizens already present in the country who are governed by § 1226. *Id.* at 288–89.

The respondents rely on an out of circuit Fifth Circuit decision to support their position that Jimenez Vera is properly detained under § 1225. ECF No. 12 at 9–12 (citing *Buenrostro-Mendez*, 166 F.4th 494). But the record is clear: Jimenez Vera is not actively seeking to lawfully cross into the territorial limits of the United States because he has already entered the United States in 2023 and was thereafter released.

Because I find that Jimenez Vera's detention is governed by § 1226(a), not § 1225(b)(2)(A), his continued detention under § 1225(b)(2)(A) violates his Fifth Amendment due process rights. Accordingly, the petition for writ of habeas corpus is granted, so the petitioner is entitled to a constitutionally sufficient bond hearing under 8 U.S.C. § 1226(a).[5] The respondents must provide him with a bond hearing within one week of the entry of this order.

**IV.     Conclusion**

IT IS HEREBY ORDERED that the petitioner's first amended petition [ECF No. 9] is **GRANTED in part for the reasons set forth in this order.**

IT IS FURTHER ORDERED that the respondents are required to give the petitioner a bond hearing, and this bond hearing must occur by May 28, 2026.

IT IS FURTHER ORDERED that the parties must file a status report no later than June 4, 2026, advising the status of compliance with this order. **The status report must include the parties' position regarding whether this matter should remain open or closed.**

Dated: May 21, 2026

_____
Cristina D. Silva
United States District Judge

---

[5] As noted above, the record reveals that Jimenez Vera's prior custody redetermination hearing did not make a finding nor state that there was an evaluation on whether Jimenez Vera was a flight risk nor a danger to the community. *See* ECF No. 9-4.